[Cite as *Owners Ins. Co. v. Westfield Ins. Co.*, 2010-Ohio-1499.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

OWNERS INSURANCE COMPANY,

    PLAINTIFF-APPELLANT,                CASE NO. 1-09-60

    v.

WESTFIELD INSURANCE COMPANY,       O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Allen County Common Pleas Court
Trial Court No. CV 2009 0837

**Judgment Affirmed**

Date of Decision: April 5, 2010

APPEARANCES:

    *Matthew J. Smith* for Appellant

    *Paul A. MacKenzie* for Appellee

Case No. 1-09-60

**SHAW, J.**

{¶1} Plaintiff-Appellant Owners Insurance Company ("Owners") appeals the November 5, 2009 Judgment Entry of the Allen County Court of Common Pleas dismissing Owners complaint against Defendant-Appellee Westfield Insurance Company ("Westfield") on the basis of the doctrine of *forum non conveniens*.

{¶2} The underlying factual background of this appeal is as follows. Owners and Westfield are both Ohio corporations in the business of insurance. Owners issued a policy insuring Paul W. Kerns, dba Kerns Electrical Services ("Kerns"), located in Kipling, Ohio, effective from October 9, 2004 to October 9, 2005. In April of 2005, Larry Morlan, dba Morlan Enterprises ("Morlan"), a general contractor and a Westfield policyholder located in Parkersburg, West Virginia, hired Kerns to perform electrical work on an Alltel Communications tower located in Wyoming County, West Virginia. Kerns completed the job within two weeks.

{¶3} Several months later on September 15, 2005, Bobby Messer was seriously injured, while working on the same Alltel Communications tower, when he came into contact with an energized 7200-volt electric transformer. Messer's left arm and right leg required amputation as a result of this incident. On October 11, 2006, Messer and his wife (the "Messers") filed a lawsuit in Wyoming County,

West Virginia based on Messer's personal injury arising out the accident. On September 6, 2007, the Messers amended their complaint to add Morlan as a defendant. Morlan filed a third-party complaint against Kerns claiming that any liability it had for Messer's injury was a result of the work performed by Kerns. The Messers subsequently amended their complaint to also include claims directly against Kerns.

{¶4} Owners retained counsel to defend Kerns and Westfield retained counsel to defend Morlan in the West Virginia action. Mediation was scheduled for March 5, 2009 and the trial was set for April 27, 2009.

{¶5} On March 3, 2009, counsel retained by Westfield to defend Morlan submitted a letter to Owners demanding that Owners tender Morlan's legal defense and also indemnify Westfield for all claims asserted by the Messers against Morlan. As the basis for the demand letter, counsel argued that Owners had a legal obligation to defend Morlan pursuant to a Certificate of Insurance issued by Owners and delivered to Morlan. The Certificate of Insurance, dated March 3, 2005, included Morlan as an additional insured under Kern's General Liability Policy with Owners. The stated effective policy term on the Certificate of Insurance was October 9, 2004 to October 5, 2005. Westfield refused to engage in any further settlement negotiations taking the position that Owners had primary coverage of Morlan during the circumstances giving rise to the Messers' injuries.

{¶6} Owners, for its part, claimed that an independent insurance agent located in Cambridge, Ohio, issued the Certificate of Insurance without its knowledge. Nevertheless, on March 5, 2009, Owners undertook the defense of Morlan in the mediation proceedings. On March 24, 2009, Morlan amended its third-party complaint in the West Virginia action to include claims directly against Owners. The third-party complaint alleged breach of contract and extracontractual claims arising out of Owner's coverage of Morlan in the Messers' tort action. Owners filed a motion to dismiss claiming that the West Virginia court lacked personal jurisdiction over Owners because it does not issue policies in West Virginia. Owners' motion to dismiss remains pending in the West Virginia case.

{¶7} During this time, Owners filed an action for Declaratory Judgment in the Guernsey County Court of Common Pleas in Cambridge, Ohio, naming the Messers, Kerns, Morlan and Westfield as defendants. Morlan and Westfield filed respective motions to dismiss based on *forum non conveniens*. In April of 2009, Owners reached a settlement agreement with the Messers wherein Owners agreed to pay $425,000 to the Messers on Morlan's behalf. However, Owners reserved its rights as to coverage declaring that the settlement was not an admission of coverage or liability on behalf of Owners. And Owners also made a demand for contribution from Westfield based on the $425,000 Owners paid to the Messers.

Westfield subsequently refused Owners' contribution demands for the settlement payment made to the Messers.

{¶8} On June 19, 2009, the Guernsey County Court of Common Pleas dismissed Owners' action for Declaratory Judgment based on the principle of *forum non conveniens*. The court specifically noted that Owners could better pursue adjudication of all of these matters in the pending West Virginia case. On July 9, 2009, the Messers signed A Release of All Claims, thereby releasing all their claims against Morlan. However, Morlan's claims against Owners still remained as part of the pending West Virginia action.

{¶9} On August 14, 2009, Owners filed a Complaint for Declaratory Judgment and Equitable Contribution against Westfield in the Allen County court of Common Pleas, in Lima, Ohio. On November 5, 2009, the Allen County court also dismissed Owner's complaint based on the doctrine of *forum non conveniens*. The court stated that it considered the relevant public and private interests involved and the particular facts of the case finding that:

> **\* \* \* Ohio has no overriding interest in deciding the case. It does not involve a localized controversy. It is a broad action for contribution based on a settlement paid in West Virginia based on claims originating in West Virginia and involves policies issued and witnesses residing in West Virginia.**

The trial court then dismissed the case noting that "many of the same issues could be covered" in the litigation pending in West Virginia.

{¶10} Owners now appeals to this Court asserting one assignment of error.

**THE TRIAL COURT ERRED IN GRANTING WESTFIELD INSURANCE COMPANY'S MOTION TO DISMISS ON THE BASIS OF *FORUM NON CONVENIENS* IN VIOLATION OF THE CONSTITUTION OF THE STATE OF OHIO AND IN CONTRAVENTION OF THE FACTS OF THIS CASE**

{¶11} In the sole assignment of error, Owners argues that the decision of the Allen County court to dismiss its complaint based upon the doctrine of *forum non conveniens* was improper. Specifically, Owners asserts two points as the basis of its appeal. First, Owners claims that the trial court's decision violates the Ohio Constitution by denying Owners, an Ohio plaintiff, to proceed with this case in an Ohio court against an Ohio defendant. Second, Owners argues that the trial court misconstrued the facts of this case when it determined that West Virginia is a more convenient forum to resolve Owners' claims against Westfield.

{¶12} Initially, we note that in support of its first assertion Owners relies on Article I, Section 16 of the Ohio Constitution which states:

> **All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.**

However, in response to an identical argument based on the principle *forum non conveniens*, the Supreme Court of Ohio has specifically stated that:

> **The right of "every person" to bring an action in an Ohio court is not an unlimited, absolute guarantee that every cognizable claim filed in a court of general jurisdiction will be litigated to a**

**final conclusion in such court. Litigants may find their claims barred by a reasonable statute of limitations, stayed by lawful injunction, dismissed by summary judgment and tempered by any number of other devices consonant with due process or "due course of law." The doctrine of *forum non conveniens* is one such device, which, when applied according to the case-specific guidelines \* \* \* fulfills rather than denies the constitutional guarantee that every person "shall have justice administered without denial or delay."**

*Chambers v. Merrell-Dow Pharmaceuticals* (1988), 35 Ohio St.3d 123, 132, 519 N.E.2d 370 (internal citations omitted).

{¶13} Thus, the more pertinent inquiry before us pertains to Owners' second issue: whether the relevant facts and circumstances of this case supported the trial court's decision to dismiss Owner's complaint on the basis of the doctrine of *forum non conveniens*.

{¶14} The doctrine of forum non conveniens permits "a court having proper jurisdiction to dismiss an action when to do so would further the ends of justice  and promote the convenience of the parties as an inherent power of the trial court[.]" *Chambers*, 35 Ohio St.3d at 125, 519 N.E.2d 370. The deciding court must consider the facts of each case in determining whether dismissal on the basis of *forum non conveniens* is proper. This assessment requires balancing the private interests of the litigants and the public interest involving the courts and citizens of the forum state. *Chambers*, 35 Ohio St.3d at 126-127, 519 N.E.2d 370;

Case No. 1-09-60

*Travelers Casualty & Surety Co. v. Cincinnati Gas & Electric Co.*, 169 Ohio App.3d 207, 210 2006-Ohio-5350, 862 N.E. 2d 201.

{¶15} Important private interests include (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Chambers*, 35 Ohio St.3d at 126-127, 519 N.E.2d 370;

{¶16} Important public interests include (1) the administrative difficulties and delay to other litigants caused by congested court calendars; (2) the imposition of jury duty upon the citizens of a community that has very little relation to the litigation; (3) a local interest in having localized controversies decided at home; and (4) the appropriateness of litigating a case in a forum familiar with the applicable law. *Id*. at 127.

{¶17} Furthermore, the decision of whether to grant a motion to dismiss on the basis of *forum non conveniens* rests within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Id*. An abuse of discretion implies "not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'" *Chambers* at 133, 519 N.E.2d 370, quoting *State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster*

(1986), 22 Ohio St.3d 191, 193, 489 N.E.2d 288. Moreover, "where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Chambers*, 35 Ohio St.3d at 127. "Once a court has determined that the alternate forum is more convenient, the common law doctrine requires the court to dismiss the action." *Id.*

{¶18} In the instant case, the trial court affirmatively stated its consideration of all the relevant public and private interest factors in determining whether a dismissal based on *forum non conveniens* was appropriate in this case. The factor the trial court found most significant was the existence of Morlan's case against Owners which remained pending in West Virginia.

{¶19} In its decision dismissing Owners' complaint, the trial court acknowledged that the precise issue of contribution between Owners and Westfield was not yet part of the litigation in the pending West Virginia case. Rather, the substantive issue being litigated in the West Virginia case is the nature and the extent of Owner's insurance coverage of Morlan in the underlying tort action. However, in our view, Owner's current complaint filed with the Allen County court requesting contribution and declaratory relief would require that court to determine coverage issues that significantly overlap with matters already pending before the West Virginia court.

{¶20} For example, the questions pertaining to coverage and contribution arising from the Certificate of Insurance issued by Owners on behalf of Morlan make the judicial construction of the Certificate of Insurance arguably the single most essential determination at issue in the pending West Virginia litigation. In dismissing this case, we believe the trial court recognized the potential risk of two courts in different jurisdictions arriving at disparate interpretations of the rights and responsibilities of *all* the litigants involved based upon the same documents and policy language.

{¶21} In response, Owners presents this case as simply one for contribution between an Ohio plaintiff and Ohio defendant based on an Ohio insurance policy. However, it is not clear from the record before us if Owners' action for declaratory judgment and equitable contribution is based strictly on an Ohio Insurance policy. The Certificate of Insurance in question was issued by an Ohio agent for coverage of a West Virginia Corporation who conducts its business only in West Virginia.

{¶22} Furthermore, the Ohio contacts with the present case are, at best, limited. Not only was West Virginia the venue where Messer's personal injury occurred creating the catalyst for this lawsuit; it is also the state where all of the transactions of direct relevance to Owner's present complaint occurred. The Certificate of Insurance and underlying policy upon which Owners now seeks declaratory relief was ultimately delivered to a West Virginia party and purports to

provide coverage for Morlan, a West Virginia citizen. Owners tendered its defense of Morlan in West Virginia based upon its then-perceived obligations arising out of the Certificate of Insurance. Additionally, West Virginia was the site where Owners negotiated the settlement payment to the Messers on behalf of Morlan for which it now seeks contribution from Westfield in this case.

{¶23} In sum, Owners is currently involved in a pending West Virginia lawsuit based, in part, on the rights and responsibilities invoked by a Certificate of Insurance which ultimately will be construed by a West Virginia court as having provided insurance coverage by Owners for Morlan or not. It appears to us that whether Owner's is entitled to contribution from Westfield for settlement money paid to the Messers on behalf of Morlan or whether Owners is ruled to have paid the settlement as a "volunteer" and not pursuant to any coverage obligations will turn, in large part, upon the judicial construction of the Certificate of Insurance and any underlying policy language brought into play thereby.

{¶24} In other words, it is our conclusion that a determination of precise coverage by Owners for Morlan is in any event, a necessary predicate to any determination as to whether Owners then may have contribution rights against Westfield for money paid on Morlan's behalf. Although Westfield is not yet a party to the West Virginia litigation, every other ingredient necessary to resolve the issue of contribution is already included in the pending West Virginia case.

**{¶25}** Based on the foregoing, we cannot conclude that the trial court abused its discretion in dismissing Owners' complaint for declaratory judgment and equitable contribution based on the principle of *forum non conveniens*. On the contrary, our review of the record reveals that the trial court considered all relevant public and private interest factors, balanced these factors reasonably in its deliberation and as such, its decision deserves substantial deference.

**{¶26}** For all these reasons, Owner's assignment of error is overruled and the Judgment of the Allen County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ROGERS, J., concur.**

**/jlr**